UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**LARENZO LOMAX**                                                      **CIVIL ACTION**

**VERSUS**                                                             **NO. 16-15869**

**DARREL VANNOY, WARDEN**                                              **SECTION: "G"(3)**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Larenzo Lomax, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On March 2, 2012, he was convicted of two counts of armed robbery under Louisiana law.[1] On May 14, 2012, he was sentenced on each count to a concurrent term of sixty years imprisonment without benefit of probation, parole, or suspension of sentence.[2] On March 22, 2013, the Louisiana First Circuit Court of Appeal affirmed his convictions and

---

[1] State Rec., Vol. 3 of 7, trial transcript, p. 597; State Rec., Vol. 1 of 7, minute entry dated March 2, 2012; State Rec., Vol. 1 of 7, jury verdict forms.
[2] State Rec., Vol. 3 of 7, transcript of May 14, 2012; State Rec., Vol. 1 of 7, minute entry dated May 14, 2012.

sentences.[3]  The Louisiana Supreme Court denied his related writ application on November 15, 2013.[4]

On February 4, 2015, petitioner filed an application for post-conviction relief with the state district court.[5]  That application was denied on March 5, 2015.[6]  His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal on August 10, 2015,[7] and by the Louisiana Supreme Court on October 17, 2016.[8]

On October 24, 2016, petitioner filed the instant federal application seeking habeas corpus relief.[9]  The state filed a response conceding that the application is timely and that petitioner exhausted his remedies in the state courts; however, the state argues that the application should be dismissed on the merits.[10]  Petitioner filed a reply to the state's response.[11]

## Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that

---

[3] State v. Lomax, No. 2012 KA 1390, 2013 WL 1189446 (La. App. 1st Cir. Mar. 22, 2013); State Rec., Vol. 3 of 7.
[4] State v. Lomax, 125 So.3d 1100 (La. 2013); State Rec., Vol. 4 of 7.
[5] State Rec., Vol. 5 of 7.
[6] State Rec., Vol. 5 of 7, Order dated March 5, 2015.
[7] State v. Lomax, No. 2015 KW 0685 (La. App. 1st Cir. Aug. 10, 2015); State Rec., Vol. 5 of 7.
[8] State ex rel. Lomax v. State, 202 So.3d 478 (La. 2016); State Rec., Vol. 5 of 7.
[9] Rec. Doc. 1.
[10] Rec. Doc. 11.
[11] Rec. Doc. 12.

state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case."  White v. Woodall, 134 S. Ct. 1697, 1706 (2014).  However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision.  AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law."  Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

**Facts**

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of petitioner's case as follows:

> On October 31, 2011, the defendant came running into the Whitney Bank on Marigny and Florida Streets in Mandeville, Louisiana. He was dressed in black from head to toe and was also wearing a mask and red gloves. The defendant had

5

a Mardi Gras bag and demanded that the bank tellers put money into the bag. He pointed a gun towards the tellers, cocked it, and told them to "hurry up" and that he was not "playing around." After the first teller filled up his bag, he told her to hand the bag to the teller behind her and said, "Now have her fill the bag." That teller froze, so the bank manager pushed her out of the way and filled the bag with money and a dye pack.[FN]  The money from the two tellers' drawers totaled approximately $15,000.00.  After the defendant left, the manager ran and locked the door.

> [FN]  According to the testimony from trial, the dye pack activates once it is removed from the safety plate inside the bank teller's drawer.  A transmitter inside of the bank activates the system.  Once the signal is broken by the person going outside of a certain range of the bank, the pack deploys and releases red smoke, tear gas, and red dye.

The bank employees could not identify the defendant as the robber, but testified that the person who robbed the bank sounded like a black male, was skinny, and approximately 5′7″ - 5′8″.

Almost immediately thereafter, Earsley Hart, Jr., was driving down Florida Street when he saw a black man run across the street from Whitney Bank. Hart saw "orangeish smoke" coming out of a bag the man was carrying. According to Hart, the man he saw running was approximately 5′10″ and had a medium build. Hart testified that the man was wearing dark clothing and had a multi-color or Mardi Gras color bag.

Kathleen Jatho worked at a daycare near the Whitney Bank. On the day of the robbery, she was sitting in her car in the daycare parking lot when she saw a man running near her car. The man was wearing dark pants and a white T-shirt underneath an unbuttoned blue and white checkered shirt. He appeared to be around 5′9″ and was carrying something that looked like a sweater. Jatho testified that the man trailed the side of a building, and the next thing she saw was a dark colored car leaving from that building. Jatho did not notice anyone else in the car. At trial, she identified the defendant as the person she saw running.

The next day, the defendant went into Winn Dixie and attempted to send money through Western Union. Katrina Holden, the in-store coordinator for Winn Dixie, noticed that the money the defendant handed her to complete the transaction had a pink or red stain on it and that the palms of the defendant's hands were also stained a pink or red color. She reported this to the store director who called 911. Holden stalled the defendant for as long as she could, then completed the transaction. She saw the defendant head toward the exit door, and the next thing she saw was an officer entering the store with a rifle.

The defendant was arrested by the St. Tammany Parish Sheriff's Office. Police obtained a search warrant for the defendant's house, where they found red and black gloves, bullets, a bathtub stained red, and money stained red. The police

6

found $1,242.00 in the attic of the defendant's house and $12,879.00 in the master bedroom and closet.  A majority of the bills were stained with pinkish-red dye.[12]

Also on appeal, the Louisiana First Circuit Court of Appeal observed:

Throughout the recorded interviews the police conducted with the defendant, he gave many different accounts of what happened on October 31, 2011.  During his first interview, the defendant stated that he was not in Louisiana at the time of the robberies.  He then stated that two of his friends were responsible for the robberies, and he was at his home while the robberies took place.  He later told the detectives that he actually did know about the robberies, was going to get a portion of the money, and took part in cleaning the money.  However, the defendant still denied taking part in the actual robberies.  He stated that he grew up with the two friends who were involved and that they had stayed at his mother's home with him in California.  But, later on in the interview, the defendant stated that he did not know their last names and that one of them was actually from Detroit.  The defendant also stated that when he saw the police officers at Winn Dixie, he contacted his two friends to notify them, but he previously told the police that he was on the phone with his fiancée at that time even though she had no knowledge of what was going on.
    In an interview on November 3, 2011, the defendant changed his story again.  This time, he stated that he actually entered the bank.  The defendant told the police that he discarded the clothes that were involved in the robberies and only kept the gloves.  In his last interview, on November 15, 2011, the defendant indicated that he was only the driver and one or both of his two friends entered the bank.  He also made phone calls that day, which were recorded.  In one call to his mother, the defendant indicated that the officers wanted him to turn in the others involved in the robberies and wanted him to "admit to everything."
    At trial, the defendant testified that on the day of the robberies, he went to get a daiquiri and saw a man running across the street with a bag in his hand.  He saw the man approach a parked car and throw out the bag.  The defendant looked into the bag, took it, and returned to his home with it.  He tried to clean the money and iron it out.  He then went to Winn Dixie and attempted to wire some of the money to his fiancée who was in California at the time.[13]

---

[12] State v. Lomax, No. 2012 KA 1390, 2013 WL 1189446, at *1-2 (La. App. 1st Cir. Mar. 22, 2013); State Rec., Vol. 3 of 7.

[13] Id. at *5-6.

7

**Petitioner's Claims**

In his federal application, petitioner asserts two ineffective assistance of counsel claims. In the state post-conviction proceedings, the state district court denied those same claims, holding that petitioner failed to meet his burden of proof.[14] Without additional reasons assigned, the claims were then likewise denied by the Louisiana First Circuit Court of Appeal[15] and the Louisiana Supreme Court.[16]

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating such claims. Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Id. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th

---

[14] State Rec., Vol. 5 of 7, Order dated March 5, 2015.
[15] State v. Lomax, No. 2015 KW 0685 (La. App. 1st Cir. Aug. 10, 2015); State Rec., Vol. 5 of 7.
[16] State ex rel. Lomax v. State, 202 So.3d 478 (La. 2016); State Rec., Vol. 5 of 7.

Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

As noted, the state court denied petitioner's ineffective assistance of counsel claims on the merits.  Because such claims present a mixed question of law and fact, this Court must defer to the state court decision unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether

9

> defense counsel's performance fell below <u>Strickland</u>'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a <u>Strickland</u> claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." <u>Ibid</u>. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then

explained:

> Surmounting <u>Strickland</u>'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions*

10

> *were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id</u>. at 105 (citations omitted; emphasis added). Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." <u>Woods v. Etherton</u>, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claims.

In his first claim, petitioner alleges that he "was denied the effective assistance of counsel when his trial counsel failed to argue that the police lacked probable cause to arrest him at the Winn Dixie."[17] In his second claim, he alleges that he "was denied the effective assistance of counsel when his trial counsel failed to challenge the Affidavit in support of Search Warrant that contained intentional false statements with a reckless disregard for the truth."[18]

Out of an abundance of caution, the undersigned first notes that petitioner's claims are *not* barred by <u>Stone v. Powell</u>, 428 U.S. 465 (1967). Although the claims are premised on alleged Fourth Amendment violations, and although <u>Stone</u> generally prohibits a petitioner from directly asserting *Fourth* Amendment claims in a federal habeas corpus application, a petitioner is not precluded from asserting related *Sixth* Amendment claims. <u>See Kimmelman v. Morrison</u>, 477 U.S. 365 (1986). In <u>Kimmelman</u>, the Supreme Court reasoned that although the two types of claims are interrelated, they are nevertheless distinct. The Supreme Court further observed:

> <u>Strickland</u>'s standard, although by no means insurmountable, is highly demanding. More importantly, it differs significantly from the elements of proof applicable to

---

[17] Rec. Doc. 1, p. 5.
[18] Rec. Doc. 1, p. 7.

a straightforward Fourth Amendment claim. Although a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim like respondent's, a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief. Only those habeas petitioners who can prove under Strickland that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence.

Id. at 382.

This Court can easily dispose of petitioner's first claim that his counsel was ineffective for failing to challenge the validity of his arrest. It is clear that "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (citations omitted).

At a pretrial hearing, Stephen Paretti, the arresting officer in the instant case, explained the basis for his belief that petitioner had committed the crime:

> A. I based my belief on what dispatch explained to us, what they dispatched across the radio, the information that we had from them, the information from the store clerk. The fact that the subject exited the store, made eye contact with me, and briskly went back into the store. The fact that when we engage the subject, once we have him in handcuffs, one of the store clerks told us that he was trying to conceal something in one of the grocery aisles in the area where we made contact with the subject. The fact that once the subject was escorted outside into the parking lot, he verified that he came to the store, the Winn Dixie store, in the vehicle that was BOLO'd previously that was possibly involved in an armed robbery which occurred in Mandeville.
>
> Q. The incident at the Winn Dixie occurred on November 1st of 2011?
>
> A. Yes.
>
> Q. And when did the bank robbery occur?
>
> A. I believe, I want to say Halloween.

> Q. Okay. And how do you get from that information that Larenzo was the man that you were looking for?
>
> A. Based on the description that our dispatch received from store clerks inside the Winn Dixie.
>
> Q. And what was that description?
>
> A. Black male gentleman. I don't recall off the top of my head at this time the actual clothing description. However, the tellers inside the Winn Dixie stated that a black male was trying to complete a transaction at Western Union which appeared to have money dye on the currency along with money dye on his hands. On top of the fact that the clerk stated she had worked a bank before, and she was familiar with the money dye and what it – how it stays on hands and how it is on the currency.[19]

The undersigned has no hesitation in finding that those facts, considered together, are sufficient to provide probable cause for petitioner's arrest. Because there was probable cause for the arrest, any motion challenging the validity of the arrest under the Fourth Amendment would have been meritless. Therefore, petitioner's Sixth Amendment claim that his counsel was ineffective for failing to assert such a challenge necessarily fails. See Kimmelman, 477 U.S. at 375 ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."). Accordingly, petitioner has not shown that the state court's decision rejecting his claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

---

[19] State Rec., Vol. 2 of 7, transcript of February 29, 2012, pp. 245-46.

In his second claim, petitioner alleges that his counsel was ineffective for failing to challenge the search warrant on the basis that the supporting affidavit contained intentional false statements. The affidavit in question was submitted by Detective Joseph Downs and stated:

> On 10/31/11, at approx. 1219 hrs, members of the Mandeville Police Department responded to the Whitney Bank, located at 1902 Florida St., Mandeville, LA relative to a report of a bank robbery. Upon arrival, Detectives met with the witness who were inside the bank at the time of the robbery. The witnesses stated that a male subject entered the bank wearing a black hooded sweat shirt, approached the teller demanding the money. The perpetrator passed a purple in color Mardi Gras bag to the teller demanding she fill the bag with cash. The teller complied and placed a explosive red dye pack in the bag with other US currency. The perpetrator fled without incident. Another witness observed the perpetrator running across Florida St. as the dye pack went off. The video surveillance inside the bank captured the perpetrator wearing long black pants with a stripe down the leg, black hooded sweatshirt with a black tee shirt over it, and black and red gloves. The perpetrator had some type of clothing or mask covering his entire head and face, he was carrying a purple in color Mardi Gras bag.
> During the investigation, Detectives accessed the LPR system which captured the lisence [sic] plate numbers of vehicle North bound on Hwy 59. A list was compiled of numerous vehicles. One vehicle on the list which was captured was a 2004 Chrysler 4dr, bearing CA plate 6PCU614 at 1219 hrs on 10/31/11. The vehicle registration returns to a Larenzo Lomax from California.
> On 11/1/11, Detectives received information that a subject at the Winn Dixie located at 4100 Hwy 59, Mandeville, making a Western Union wire transfer with US currency that had red dye on it. The Detectives along with members of the STPSO responded to that location and located a black male subject identified as Larenzo Lomax dob [redacted], residing at 1528 Clover St., Mandeville. Lomax was pointed out by the store personell [sic] as being the person who made the wire transfer. The above vehicle was located in the parking lot of the Winn Dixie, which after Lomax was verbally advised on his Miranda Rights he confirmed that was his vehicle. Lomax also was formally advised of his Rights and during the course of an interview, he stated that currency obtained in the robbery was concealed within his residence, 1528 Clover St.[20]

An affidavit used to support a search warrant is presumed valid; however, the affidavit's veracity may be attacked by showing deliberate falsehood or reckless disregard for the truth by the

---

[20] State Rec., Vol. 5 of 7.

14

affiant. Franks v. Delaware, 438 U.S. 154, 171 (1978). A petitioner asserting such a claim therefore bears the burden of showing, by a preponderance of the evidence, that the alleged misstatement was made with more than mere negligence. United States v. Runyan, 290 F.3d 223, 234 n.6 (5th Cir. 2002). Further, even if he can show that the affiant made deliberately false statements or made statements with reckless disregard for the truth, a hearing is unnecessary if, when these statements are set to one side, the warrant affidavit supports a finding of probable cause. Franks, 438 U.S. at 171-72.

In the instant case, petitioner claims that counsel should have challenged the veracity of the affidavit on three grounds:

1. The affidavit was false in stating that petitioner had admitted that currency from the robbery was in his residence.

2. The affidavit was also false in stating that the currency used at the Winn Dixie was stained with red dye.

3. The affidavit was misleading in that it failed to reveal that the location where petitioner's vehicle was captured on the License Plate Recognition (LPR) system was less than three miles from his house.

Petitioner's allegations are unavailing for the following reasons.

First, there is no colorable evidence that Downs deliberately lied in stating that petitioner admitted that the currency was in his house. On the contrary, Downs' statement was in fact corroborated by Deputy Vaughn Whitehead, who testified at trial regarding petitioner's statement when interviewed by the police:

> I asked him if there was any money in his house, and he stated, "Yeah, there was a lot of money in there." And he pretty much said that, you know, he thought

15

>that those guys had left that money there for him to use.  And I asked him if it had any dye on it.  He said, "Yeah, it did have red dye on it."[21]

Further, consistent with petitioner's purported admission, the currency was in fact found stashed in the house.

Second, regarding the statement that the currency at Winn Dixie was stained with red dye, Downs was merely relating the information he had received from the store employee.  Even if that underlying information was untrue, *a fact which petitioner has **not** established*, it would not serve as a basis for challenging the affidavit because the purportedly false statement was made by a store employee, *not* Downs.  See Franks, 438 U.S. at 171-72 ("The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant."); United States v. Arrington, 618 F.2d 1119, 1125 (5th Cir. 1980) ("proof that informant's information was false would not have vitiated probable cause for the warrant").

Third, the statement regarding the location of the vehicle when captured by the LPR system shortly after the robbery was not misleading.  Even if that location was less than three miles from petitioner's residence, it was even closer to the bank where the robbery occurred.

With these considerations in mind, this Court cannot say that the state district judge would have granted a request for a Franks hearing or that petitioner would have prevailed had the state district judge held a Franks hearing.  Therefore, he has not established that his trial counsel's failure to challenge the affidavit constituted ineffective assistance of counsel.  Accordingly, again, petitioner has not shown that the state court's denial of his second ineffective assistance of counsel

---

[21] State Rec., Vol. 2 of 7, trial transcript, p. 387.

claims "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Therefore, this second claim likewise fails.

Lastly, the undersigned is aware that petitioner now complains that his lack of evidence to support his claims stems from the fact that he was not afforded a post-conviction evidentiary hearing in the state courts. However, that argument is not properly before this Court. Louisiana law expressly provides for summary disposition of post-conviction applications: "If the court determines that the factual and legal issues can be resolved based upon the application and answer, and supporting documents, including relevant transcripts, depositions, and other reliable documents submitted by either party or available to the court, the court may grant or deny relief without further proceedings." La. Code Crim. P. art. 929(A). Further, the state court's decision on such matters is not reviewable in federal court. As one court recently explained:

> To the extent that petitioner complains that the State Court denied his post-conviction application without holding an evidentiary hearing pursuant to Louisiana Code of Criminal Procedure article 929(A), that claim is not cognizable in this federal habeas corpus proceeding. In this case, the trial court determined that it could properly resolve petitioner's post-conviction application pursuant to article 929(A). Federal courts "do not sit as a super state supreme court...." Taylor v. Cain, 2010 WL 6620876, *12 (W.D. La. 2010) citing Skillern v. Estelle, 720 F.2d 839, 852 (5th Cir. 1983). Thus, it is not the province of this court to determine if the state courts properly applied state law. Id. citing Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475, 480 (1991) and Narvaiz v. Johnson, 134 F.3d 688 (5th Cir. 1998). Moreover, the Fifth Circuit has repeatedly held that defects in a state habeas proceeding are not cognizable under 28 U.S.C. § 2254. Id. (and cases cited therein including Moore v. Dretke, 369 F.3d 844, 846 (5th Cir. 2004), Rudd v. Johnson, 256 F.3d 317, 319-20 (5th Cir.), cert. denied, 534 U.S. 1001, 122 S.Ct. 477, 151 L.Ed.2d 391 (2001), Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir. 1999); Kidd v. Keith, 2014 WL 463056, *5 (W.D. La. 2014) (citations omitted).

Pitts v. Tanner, Civ. Action No. 6:14-cv-3145, 2015 WL 10045174, at *23 (W.D. La. Dec. 14, 2015), adopted, 2016 WL 554884 (W.D. La. Feb. 10, 2016); accord Ross v. Vannoy, Civ. Action

No. 16-2568, 2016 WL 4991537, at *9-10 (E.D. La. July 5, 2016), adopted, 2016 WL 4942846 (E.D. La. Sept. 16, 2016); Smith v. Terrell, Civ. Action No. 09-3791, 2009 WL 4799190, at *3 (E.D. La. Dec. 7, 2009).

The Court further notes that petitioner also is not entitled to a federal evidentiary hearing to secure new evidence at this stage of review. On the contrary, the United States Supreme Court has expressly stated:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time *i.e.,* the record before the state court.
> This understanding of the text is compelled by "the broader context of the statute as a whole," which demonstrates Congress' intent to channel prisoners' claims first to the state courts. The federal habeas scheme leaves primary responsibility with the state courts. Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief. It would be contrary to that purpose to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo*.
> Limiting § 2254(d)(1) review to the state-court record is consistent with our precedents interpreting that statutory provision. Our cases emphasize that review under § 2254(d)(1) focuses on what a state court knew and did. State-court decisions are measured against this Court's precedents as of the time the state court renders its decision. To determine whether a particular decision is "contrary to" then-established law, a federal court must consider whether the decision applies a rule that contradicts such law and how the decision confronts the set of facts that were before the state court. If the state-court decision identifies the correct governing legal principle in existence at the time, a federal court must assess whether the decision unreasonably applies that principle to the facts of the prisoner's case. It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.

Cullen v. Pinholster, 563 U.S. 170, 181-83 (2011) (citations, quotation marks, brackets, and ellipsis omitted).

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Larenzo Lomax be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[22]

New Orleans, Louisiana, this sixteenth day of February, 2017.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[22] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.